IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RMF INDUSTRIAL CONTRACTING, INC.<br>    Plaintiff,<br>   v.<br>RELIANT ENERGY SEWARD, LLC, and SEWARD TRUST,<br>    Defendants. | Civil Action Nos. 2:03cv1231<br>                           2:03cv1715<br><br>Consolidated at No. 2:03cv1231 |
| RMF INDUSTRIAL CONTRACTING, INC.<br>    Plaintiff,<br>   v.<br>RELIANT ENERGY SEWARD, LLC,<br>    Defendant. | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Before the Court for consideration and disposition is DEFENDANTS' MOTION FOR SUMMARY JUDGMENT TO REDUCE THE AMOUNT OF PLAINTIFF'S MECHANIC'S LIEN CLAIM (*Document No. 34*). The issues have been thoroughly briefed, and the matter is ripe for disposition. *See* Document Nos. 40 & 49. For the reasons which follow, Defendant's Motion will be granted.

Background

At issue in the instant Motion is the extent of Plaintiff RMF Industrial Contracting, Inc.'s ("RMF") waiver of its right to place a mechanic's lien on power plant property owned by Defendant Reliant Energy Seward, LLC ("Defendant"). In its Motion Defendant seeks to reduce RMF's two liens on its power plant from $35,900,000.00 to $7,244,021.89.[1] Defendant contends

---

[1] The amount of each lien is $35,900,000.00. At a status conference held on October 7, 2005, counsel for RMF represented to the Court that RMF had voluntarily lowered the amounts of the liens to $29,235,060.00 because RMF's subsequent investigation revealed that the higher number ($35,900,000.00) overstated the extra expenses incurred by RMF.

that RMF, a subcontractor, waived its right to place a lien on the difference between these two amounts when it submitted monthly progress payment requests to Alstom Power, Inc. ("Alstom"), which was the general contractor on the power plant construction project.

Defendant is the owner of a power plant and associated structures on property located in Indiana County, Pennsylvania. Def's Stmt. of Facts at ¶ 1.[2] Defendant retained Alstom and Duke/Flour Daniel, LLC ("DFD") to provide engineering, procurement, construction and commissioning services for the construction of a new power plant commonly referred to as the Seward Repowering Project (the "Project"). *Id*. at ¶ 3. In January of 2002 RMF entered into a Purchase Order with Alstom. *Id.* at ¶ 4. Pursuant to the Purchase Order, RMF agreed to erect and install certain circulating fluidized bed boilers and associated systems for the Project. *Id*. at ¶ 4. The original amount of the Purchase Order was $46,180,000, which did not contemplate additional expenses due to change orders, quantity scope growth, force majeure events or other factors that may have increased the cost of RMF's performance under the Purchase Order. Pltf's Stmt. of Facts at ¶ 5.

The Purchase Order between RMF and Alstom included, *inter alia*, a document entitled General Terms and Conditions. Def's Stmt. of Facts at ¶ 6. The General Terms and Conditions included the following provision:

> 4.10 All Payments Subject to Release of Liens. At the time of each Progress Payment (or portion thereof, Contractor shall certify to Purchaser, and provide to Purchaser an interim lien waiver and release in a form mutually acceptable to the Parties and in accordance with this Agreement to establish that the Facility Site and any and all interests and estates therein, and all improvements and materials placed on the Unit Facility Site, are free from any and all claims, liens, security interests or encumbrances in the nature of mechanics', labor or material men's liens or otherwise, arising out of or in connection with the Agreement or performance by Contractor or any Subcontractor of the Work.

Pltf's Stmt. of Facts at ¶ 7. In accordance with section 4.10 of the General Terms and Conditions, RMF executed lien waivers and provided them to Alstom as part of each Monthly Progress Payment Request submitted by RMF. Def's Stmt. of Facts at ¶ 10. Each Monthly

---

[2] Defendant Seward Trust merged with Reliant Energy Seward, LLC in September of 2003. Def's Stmt. of Facts at ¶ 2. The Court refers to both as "Defendant."

Progress Payment Request contained the following lien waiver language:

> Furthermore, in consideration of the payments received and upon receipt of the amount of this request, **the undersigned does hereby waive, release and relinquish all claims or right of lien which the undersigned may now have upon the premises described above except for claims or right of lien for contract and/or change order work performed to the extent that payment is being retained or will subsequently become due**.

Pltf's Stmt. of Facts at ¶ 10 (emphasis added).

The performance by RMF of its duties under the Purchase Order was allegedly hampered by various problems. Some of the problems were allegedly caused by Alstom (*i.e.*, insufficient laydown area, lack of site maintenance, schedule delay and scope growth), while others (*i.e.*, an extremely harsh winter) were beyond the control of anyone involved with the Project. *See* Pltf's Mem. in Opp. at 6-10 (describing RMF's difficulties with the Project). These problems allegedly caused RMF to incur additional expenses of approximately $35,900,000.00, which RMF later determined to be approximately $29,235,060.00 and reduced the lien amounts accordingly. *See supra* n.1.[3]

On or about March 28, 2003, RMF submitted Progress Payment Request No. 14 to Alstom requesting payment of $417,096.64 for contract and approved change order work performed on the Project through March 2, 2003. Def's Stmt. of Facts at ¶ 16. As part of Progress Payment Request No. 14, RMF submitted a Contractor's Application for Payment. *Id*. at ¶ 17. The Contractor's Application for Payment was executed on March 18, 2003 and contained the lien waiver language described above. *Id*.[4] On or about April 18, 2003, Alstom paid the full amount of $417,096.04 requested by RMF in Progress Payment Request No. 14. *Id*. at ¶ 18.

RMF was eventually terminated from the Project by Alstom. RMF then filed two mechanic's liens on the power plant property in an amount equivalent to its alleged additional

---

[3] RMF's right to recover these additional expenses from Alstom is at issue in another action presently pending before the undersigned at civil action number 03-627.

[4] Defendant refers to the Contractor's Application for Payment as the "March 18th Lien Waiver."

expenses.  *See* Pltf's Mem. in Opp. at 4 ("The $35,900,000 lien amount is for costs associated with labor and equipment that were expended beyond RMF's additional scope [of work]").

Defendant asserts that "[b]y executing the March 18th Lien Waiver, RMF expressly relinquished any right it may have had to a claim for any and all work it performed on the Project as of March 18, 2003, with the exception of its right to claim a lien for 'contract and/or change order work performed to the extent that payment is being retained or will subsequently become due.'"  Def's Stmt. of Facts at ¶ 20.  RMF contends that the lien waiver language did not apply to the additional, unforeseen expenses that were incurred due to the various problems mentioned above, and that said langauge is ambiguous.  The resolution of this dispute requires a careful examination of the language and structure of the Purchase Order.

<u>Standard of Review</u>

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323.  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)).  Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence.  *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993).

The task of interpreting a contract is a function of the court.  The goal of that task is to

ascertain the intent of the parties as manifested in the language of the written instrument. *Standard Venetian Blind Co. v. American Empire Insurance Company*, 469 A.2d 563, 566 (1983). An ambiguity exists when a questionable term or language, viewed in the context of the entire agreement, is reasonably susceptible of different constructions and capable of being understood in more than one sense. *J.C. Penney Life Insurance Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004). However, a court should interpret the agreement to avoid ambiguities and give effect to all of its provisions, and refrain from torturing the language of a policy to create ambiguities where none exist. *Pilosi*, 393 F.3d at 363.[5]

Discussion

The issue to be determined is whether the additional, disputed expenses allegedly incurred by RMF are "claims or right of lien for contract and/or change order work performed to the extent that payment is being retained or will subsequently become due." If the additional expenses allegedly incurred by RMF are covered by this exception to the lien waiver, then the liens are valid and may not be disturbed at this juncture. However, if the additional expenses are not covered by this exception, RMF has partially waived its right to place a lien on the power plant property and the amount of the liens must be reduced to $7,244,021.89 (the extent of the waiver).[6]

The Court must first determine whether the disputed amounts arise out of "contract ... work." The Court finds that the disputed amounts *do not* arise out of "contract ... work" because the disputed amounts are not within the scope of work delineated in the Purchase Order. *See*

---

[5] A federal court sitting in diversity must apply the substantive law as decided by the state's highest court. *Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997) (citation omitted). It is undisputed that the contract between RMF and Alstom is governed "in all respects" by Pennsylvania law. *See* Purchase Order, General Terms and Conditions, ¶ 24.3.

[6] Pennsylvania law provides that "[a] contractor or subcontractor may waive his right to file a claim by a written instrument signed by him or by any conduct which operates equitably to estop such contractor or subcontractor from filing a claim." 49 P.S. § 1401.

Pltf's Br. at 4 ("The $35,900,000 lien amount is for costs associated with labor and equipment that were expended beyond RMF's original scope."); Def's Reply Br. at 20 ("As used in the RMF Lien Waivers, "contract ... work" means the original scope of work defined in the Purchase Order between Alstom and RMF."). Therefore, unless the disputed work performed by RMF qualifies as "change order work performed to the extent that payment is being retained or will subsequently become due," RMF has waived its right to assert a lien for such work, and the Motion for Summary Judgment must be granted.

Alstom contends that "change order work performed to the extent that payment is being retained or will subsequently become due" is limited to "work that RMF performed pursuant to a written change order issued and signed by Alstom." Reply at 21. In other words, "change order work" can only be performed after Alstom has authorized and issued a Scope Change Order.[7] Although the lien waiver language is not a model of clarity, the Court agrees with Alstom's interpretation of the lien waiver language for the following reasons. First, Alstom's interpretation of "change order work" is consistent with sections 7.2 and 7.3.4 of the Purchase Order. Section 7.2 provides as follows:

> Scope Changes. [Alstom], without invalidating the Agreement, may order Scope Changes to the Work, in which event one or more of the Contract Price, the Work Schedule or guarantees shall be adjusted as necessary. **All Scope Changes shall be authorized by a Scope Change Order and only [Alstom] may issue Scope Change Orders.**

Purchase Order, § 7.2. Section 7.3.4 provides that "[Alstom] shall issue a Scope Change Order for each Scope Change." These sections indicate that only Alstom possessed the authority to authorize "change order work" through the issuance of a Scope Change Order.

Second, the process that Alstom and RMF were to follow in the event of scope changes is

---

[7] "Scope Change Order" is defined as:
[A] written order to [RMF] issued and signed by [Alstom] after the execution and delivery of the agreement authorizing a Scope Change and, if appropriate, an adjustment in one or more of the Contract Price, the Guaranteed Completion Date, the Schedule of Values, the Unit Schedule, or any other amendment of the terms and conditions of the Agreement.
Purchase Order, General Terms and Conditions, § 1.1 (emphasis added).

set forth with specificity in Article 7 of the Purchase Order.  Section 7.1 states that "[a] material addition to, deletion from, suspension of or other modification to the requirements or provisions of the Agreement shall constitute a Scope Change ..."  Purchase Order, § 7.1.  Section 7.3.1 provides that "[a]s soon as [RMF] becomes aware of any circumstances which [RMF] has reason to believe may constitute a Scope Change, [RMF] shall issue to [Alstom] a Scope Change Order Notice[8] at [RMF's] expense within five (5) working days of discovery of a scope change."  RMF submitted numerous Scope Change Order Notices (SCONs) to Alstom pursuant to section 7.3.1.  Pltf's Responsive Stmt. of Facts at ¶¶ 136-65.[9]  Section 7.3.2 provides for the next step of the process in which RMF was to submit a SCON; this section also applies to situations where Alstom desires to make a Scope Change without RMF having submitted a SCON.  Section 7.3.2 provides that:

> If [Alstom] desires to make a Scope Change in response to a Scope Change Order Notice or otherwise, it shall submit a Scope Change Order Request to [RMF].  [RMF] shall promptly review the Scope Change Order Request and notify [Alstom] in writing of the options for implementing the proposed Scope Change ... and the effect, if any, each such option would have on each of the Contract Price, the Substantial Completion Date, the Schedule of Values, the Unit Schedule (*sic*).

Purchase Order, § 7.3.2.[10]  Section 7.3.3 provides for an additional step: "[i]f [Alstom] agrees that a Scope Change is in order and accepts statement of the effect of such Scope Change on the Contract Price, the Substantial Completion Date, the Schedule of Values, the Work Schedule or the guarantees, [Alstom] shall issue a Scope Change Order ..."  As in sections 7.2 and 7.3.4, these sections indicate that only Alstom possessed the authority to authorize "change order work"

---

[8]  A "Scope Change Order Notice" is "a written notice to [Alstom] issued by [RMF] requesting Scope Change Order (*sic*) in connection with the performance of the Work."  Purchase Order, General Terms and Conditions, § 1.1.

[9]  Defendant denied that RMF was entitled to any additional compensation for each of the SCONs.  Pltf's Responsive Stmt. of Facts at ¶¶ 166-77.

[10]  A "Scope Change Order Request" is "a written proposal issued and signed by [Alstom] or requesting a Scope Change, submitted to [RMF] by [Alstom] or the pursuant (*sic*) to the terms of Section 7.3.2."  Purchase Order, General Terms and Conditions, § 1.1.

through the issuance of a Scope Change Order.

Third, Article 7 of the Purchase Order explicitly addresses the type of work for which RMF has filed its liens. The disputed work arises out of two general categories: 1) a force majeure event (*i.e.*, an extremely harsh winter), and 2) problems which were allegedly caused by Alstom (*i.e.*, insufficient laydown area, lack of site maintenance, schedule delay, scope growth). *See* Pltf's Mem. in Opp. at 6-10. Scope changes which arise due to force majeure events are addressed by section 7.6 of the Purchase Order, which provides, in part, as follows:

> In the event and to the extent that a Force Majeure Event affects [RMF's] ability to meet the Liquidated Damages dates, the Schedule of Values or the Unit Schedule, an equitable adjustment in one or more of the Liquidated Damages Date/s, the Schedule of Values, Contract Price and the Unit Schedule shall be made by agreement of [Alstom] and [RMF].

Purchase Order, § 7.6.[11]

Scope changes caused by Alstom's failure to perform its obligations under the Agreement are addressed by section 7.7 of the Purchase Order, which provides as follows:

> In the event and to the extent a failure of [Alstom] to perform, or cause performance of, its obligations in accordance with the Agreement causes a delay in [RMF's] performance of the Work which impairs [RMF's] ability to meet the Guaranteed Completion Date or Final Acceptance or adversely impacts [RMF's] cost of performance of the Work, an equitable adjustment in one or more of the Guaranteed Completion Date, the Schedule of Values, the Project Schedule or the Contract Price shall be made by agreement of [Alstom] and [RMF] pursuant to this Article 7.0.

Purchase Order, § 7.7.

The Court's distillation of all of these terms and procedures comes down to this: in order for RMF to perform "change order work," a contractually established procedure had to be followed, and Alstom was ultimately required to issue a "Scope Change Order." Specifically, either RMF had to submit a SCON under section 7.3.1, which RMF did, or Alstom had to initially request a Scope Change Order under section 7.3.2. The parties were then required to follow the additional steps outlined in Article 7, which, in theory, would culminate in the

---

[11] Unlike other sections within Article 7, The Purchase Order does not expressly indicate whether RMF was required to follow the procedures for obtaining a Scope Change Order in order to receive compensation for a Force Majeure Event.

issuance of a Scope Change Order by Alstom.  However, with respect to the disputed amounts Alstom never "agree[d] that a Scope Change [was] in order," and therefore did not "issue a Scope Change Order" under section 7.3.2.  Purchase Order, § 7.3.2.  Without a Scope Change Order issued by Alstom, RMF cannot be said to have performed "change order work."  Because the disputed amounts do not arise out of "change order work" performed by RMF, the disputed amounts do not fall under the exception to the lien waiver for "change order work performed to the extent that payment is being retained or will subsequently become due."  Therefore, the Court finds and rules that by having executed the lien waiver on March 18, RMF waived its right to file a mechanic's lien for the extra work it allegedly performed in an amount greater than $7,244,021.89.[12]  Accordingly, Defendants' Motion for Summary Judgment to Reduce the Amount of Plaintiff's Mechanic's Lien Claim will be granted.

### Conclusion

For the reasons hereinabove stated, Defendants' Motion for Summary Judgment to Reduce the Amount of Plaintiff's Mechanic's Lien Claim will be granted.  The Court will order RMF to reduce the amount of its mechanic's liens to no more than $7,244,021.89 within ten (10) days of the date of this Memorandum Opinion.  An appropriate Order follows.

McVerry, J.

---

[12] The Court also finds and rules that the lien waiver language is not ambiguous.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RMF INDUSTRIAL CONTRACTING, INC. | ) |
|          **Plaintiff,** | ) |
|    v. | ) |
| RELIANT ENERGY SEWARD, LLC, and SEWARD TRUST, | ) Civil Action Nos.  2:03cv1231 |
|          **Defendants.** | )                        2:03cv1715 |
| | ) Consolidated at No.  2:03cv1231 |
| RMF INDUSTRIAL CONTRACTING, INC. | ) |
|          **Plaintiff,** | ) |
|    v. | ) |
| RELIANT ENERGY SEWARD, LLC, | ) |
|          **Defendant.** | ) |

**ORDER OF COURT**

AND NOW, this 16th day of February, 2006, in accordance with the foregoing Memorandum Opinion it is hereby ORDERED, ADJUDGED and DECREED as follows:

1)   Defendants' Motion for Summary Judgment to Reduce the Amount of Plaintiff's Mechanic's Lien Claim (*Document No. 34*) is **GRANTED**;

2)   Plaintiff RMF Industrial Contracting, Inc. **SHALL AMEND** its Mechanic's Lien Claim filed on July 2, 2003 in the Court of Common Pleas of Indiana County, Pennsylvania, and later removed to this Court and consolidated into C.A. 03-1321, to reduce the amount of said Mechanic's Lien Claim to no more than $7,244,021.89 within ten (10) days of the date of this Order; and

3)   Plaintiff RMF Industrial Contracting, Inc. **SHALL AMEND** its Mechanic's Lien Claim filed on October 1, 2003 in the Court of Common Pleas of Indiana County, Pennsylvania, and later removed to this Court and consolidated into C.A. 03-1321, to reduce the amount of said Mechanic's Lien Claim to no more than $7,244,021.89 within ten (10) days of the date of this Order.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc: Ronald W. Crouch, Esquire
Email: rcrouch@mcguirewoods.com

Gerald J. Stubenhofer, Esquire
Email: gstubenhofer@mcguirewoods.com

Kevin S. Batik, Esquire
Email: kbatik@mcguirewoods.com

D. Troy Blair, Esquire
Email: dtblair@duanemorris.com

David A. Scotti, Esquire
Duane Morris, LLP
600 Grant Street, Suite 5010
Pittsburgh, PA 15219